1   Christopher A. Carr (# 44444)
      ccarr@afrct.com
2   David M. Newman (# 246351)
      dnewman@afrct.com
3   ANGLIN, FLEWELLING, RASMUSSEN,
      CAMPBELL & TRYTTEN LLP
4   199 South Los Robles Avenue, Suite 600
    Pasadena, California 91101-2459
5   Tel:  (626) 535-1900 | Fax:   (626) 577-7764

6   Attorneys for Defendant
    WELLS FARGO BANK, N.A., successor
7   by merger with Wells Fargo Bank
    Southwest, N.A., f/k/a Wachovia Mortgage,
8   FSB, f/k/a World Savings Bank, FSB
    ("Wells Fargo")

9

10                  UNITED STATES DISTRICT COURT

11               SOUTHERN DISTRICT OF CALIFORNIA

12

13   MARIA TERESA OSSA,                  Case No.:  3:13-cv-1776 BEN BLM

14              Plaintiff,               [Assigned to Hon. Roger T. Benitez]

15   v.                                  **WELLS FARGO'S MOTION TO
                                         DISMISS COMPLAINT;**
16   WELLS FARGO MORTGAGE, a             **MEMORANDUM OF POINTS AND**
    division of Wells Fargo Bank, N.A., a **AUTHORITIES**
17   business entity form unknown, NDEX
    WEST, LLC a business entity form     *[Filed with Request for Judicial Notice]*
18   unknown, and DOES 1-100, inclusive,
                                         Date:     September 16, 2013
19              Defendants.              Time:    10:30 a.m.
                                         Dept.:   5A
20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# <u>TABLE OF CONTENTS</u>

Page

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

1.    INTRODUCTION.................................................................................................1

2.    RELEVANT ALLEGATIONS AND FACTS......................................................1

3.    THE STATE LAW CLAIMS ARE PREEMPTED BY HOLA. ....................3

      A.    As A Federally Chartered Savings Bank, World Savings
            Operated Under HOLA...........................................................................3

      B.    OTS Regulations Promulgated Under HOLA Preempt Any
            State Laws Which Affect Loan Origination, Disclosures, And
            Lending Regulation.................................................................................4

      C.    State Laws Preempted By HOLA.............................................................4

      D.    HOLA Preempts The HBOR Claims (Civ. Code §§ 2923.55
            and 2923.6)..............................................................................................5

      E.    The Application of HOLA Preempts The Remaining State Law
            Claims......................................................................................................8

4.    IN ADDITION, THE COURT LACKS JURISDICTION OVER THE
      NATIONAL MORTGAGE SETTLEMENT CONSENT
      JUDGMENT. .....................................................................................................10

5.    THE COURT SHOULD DISMISS THE FIRST CLAIM.............................11

6.    THE COURT SHOULD DISMISS THE SECOND CLAIM.......................14

7.    THE COURT SHOULD DISMISS THE THIRD CLAIM. ........................18

8.    THE COURT SHOULD DISMISS THE FOURTH CLAIM.......................20

9.    THE COURT SHOULD DISMISS THE FIFTH CLAIM. ..........................23

10.   CONCLUSION. ................................................................................................25

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Aleem v. Bank of Am.*,
   2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010)......................................23

5

*Amaral v. Wachovia Mortg. Corp.*,
   692 F. Supp. 2d 1226 (E.D. Cal. 2010)......................................................10

6

7

*Armstrong v. Chevy Chase Bank, FSB*,
   2012 U.S. Dist. LEXIS 144125 (N.D. Cal. Oct. 3, 2012)......................................22

8

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007)......................................................................13

9

10

*Crawford-El v. Britton*,
   523 U.S. 574 (1998).........................................................................13

11

*DeLeon v. Wells Fargo Bank, N.A.*,
   2011 U.S. Dist. LEXIS 8296 (N.D. Cal. 2011) ...............................................20

12

13

*DeLeon v. Wells Fargo Bank, N.A.*,
   729 F. Supp. 2d 1119 (N.D. Cal. 2010) ..............................................4, 9, 20

14

15

*Dooms v. Fed. Home Loan Mortg. Corp.*,
   2011 U.S. Dist. LEXIS 38550 (E.D. Cal. Mar. 30, 2011) ....................................21

16

*Escobedo v. Countrywide Home Loans, Inc.*,
   2009 U.S. Dist. LEXIS 117017 (S.D. Cal. Dec. 15, 2009)....................................23

17

18

*Gomez v. Wachovia Mortg. Corp.*,
   2010 U.S. Dist. LEXIS 3799 (N.D. Cal. Jan. 15, 2010) .....................................10

19

20

*Gorton v. Wells Fargo Bank, N.A.*,
   2012 U.S. Dist. LEXIS 168158 (C.D. Cal. Nov. 27, 2012).....................................3

21

*Gorton v. Wells Fargo Bank N.A*,
   2013 U.S. Dist. LEXIS 86006 (C.D. Cal. June 3, 2013) ......................................7

22

23

*Guglielmelli v. Wells Fargo Bank, N.A.*,
   2013 U.S. Dist. LEXIS 43063 (C.D. Cal. Mar. 26, 2013) ....................................12

24

*Hoffman v. Bank of America, N.A.*,
   2010 U.S. Dist. LEXIS 70455 (N.D. Cal. June 30, 2010) ....................................23

25

26

*In re Gilead Sciences Securities Litig.*,
   536 F.3d 1049 (9th Cir.2008) ..............................................................13

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Johnston v. Ally Fin., Inc.,*
  2011 U.S. Dist. LEXIS 83298 (S.D. Cal. July 29, 2011) ........................................22

*Kaplan v. Wells Fargo Bank, N.A.,*
  2013 U.S. Dist. LEXIS 109023 (C.D. Cal. July 30, 2013) ........................................8

*Karimi v. Wells Fargo,*
  2011 U.S. Dist. LEXIS 47902 (C.D. Cal. 2011)........................................22

*Martinez v. Welk Group, Inc.,*
  2011 U.S. Dist. LEXIS 58718 (S.D. Cal. June 2, 2011)........................................19

*McGough v. Wells Fargo Bank, N.A.,*
  2012 U.S. Dist. LEXIS 151737 (N.D. Cal. 2012) ........................................12

*Melegrito v. CitiMortgage Inc.,*
  2011 U.S. Dist. LEXIS 60447 (N.D. Cal. June 6, 2011) ........................................19

*Murillo v. Aurora Loan Servs., LLC,*
  2009 U.S. Dist. LEXIS 61791 (N.D. Cal. July 17, 2009)........................................5, 6

*Nguyen v. Wells Fargo Bank, N.A.,*
  749 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................5, 6

*Nong v. Wells Fargo Bank, N.A.,*
  2010 U.S. Dist. Lexis 136464 (C.D. Cal. Dec. 6, 2010)........................................23

*Odinma v. Aurora Loan Servs.,*
  2010 U.S. Dist. LEXIS 28347 (N.D. Cal. Mar. 23, 2010)........................................6

*Ottolini v. Bank of Am.,*
  2011 U.S. Dist. LEXIS 92900 (N.D. Cal. Aug. 19, 2011)........................................22

*Resolution Trust Corp. v. BVS Dev.,*
  42 F.3d 1206 (9th Cir. 1994) ........................................21

*Sato v. Wachovia Mortg., FSB,*
  2011 U.S. Dist. LEXIS 75418 (N.D. Cal. July 13, 2011)........................................9

*Settle v. World Savs. Bank, FSB,*
  2012 U.S. Dist. LEXIS 4215 (C.D. Cal. Jan.11, 2012) ........................................22

*Sharma v. Wachovia,*
  2011 U.S. Dist. LEXIS 1736 (E.D. Cal. Jan. 6, 2011) ........................................9

*Tamayo v. World Savs. Bank, FSB, et al.,*
  2009 U.S. Dist. LEXIS 73298 (S.D. Cal. July 23, 2009) ........................................10

*Taquinod v. World Savings Bank, FSB,*
  2010 U.S. Dist. LEXIS 127677 (C.D. Cal. Dec. 2, 2010) ........................................5

ii

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................19

*Williams v. Wells Fargo Bank, N.A. et al.*,
    2013 U.S. Dist. LEXIS 68615 (C.D. Cal. May 13, 2013) ......................3

**STATE CASES**

*Brea v. McGlashan*,
    3 Cal. App. 2d 454 (1934) ..............................................................24

*Cel-Tech Comm'cns, Inc., v. L.A. Cellular Tel. Co.*,
    20 Cal.4th 163 (1999) ....................................................................19

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) ...................................................................19

*Daro v. Superior Court*,
    151 Cal. App. 4th 1079 (2007) .......................................................20

*Flannery v. Prentice*,
    26 Cal.4th 572 (2001) ....................................................................16

*Hall v. Time, Inc.*,
    158 Cal. App. 4th 847 (2008) .....................................................18, 20

*Ingels v. Westwood One Broadcasting Services, Inc.*,
    129 Cal. App. 4th 1050 (2005) .......................................................19

*Khoury v. Maly's of Cal., Inc.*,
    14 Cal. App. 4th 612 (1993) ...........................................................18

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ..................................................................18

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ...........................................................21

*Lopez v. World Savings & Loan Ass'n*,
    105 Cal. App. 4th 729 (2003) ...........................................................4

*Mabry v. Superior Court*,
    185 Cal. App. 4th 208 (2010) .....................................................5, 6, 7

*MacIsaac v. Waste Management Collection and Recycling, Inc.*,
    134 Cal. App. 4th 1076 (2005) .......................................................16

*Meyers v. Guarantee Sav. & Loan Ass'n.*,
    79 Cal. App. 3d 307 (1978) ............................................................22

*Moeller v. Lien*,
  25 Cal. App. 4th 822 (1994) ........................................................................................25

*Nguyen v. Calhoun*,
  105 Cal. App. 4th 428 (2003) ......................................................................................25

*Nymark v. Heart Fed. Savs. & Loan Ass'n*,
  231 Cal. App. 3d 1089 (1991) ..............................................................................21, 22

*Price v. Wells Fargo Bank*,
  213 Cal. App. 3d 465 (1989) ......................................................................................24

*San Pedro Lumber Co. v. Reynolds*,
  111 Cal. 588 (1896) ....................................................................................................24

*Saunders v. Superior Court*,
  27 Cal. App. 4th 832 (1994) .......................................................................................19

*Software Design and Application Ltd. v. Hoeffer & Arnolt, Inc.*,
  49 Cal. App. 4th 472 (1996) .......................................................................................21

*St. James Church v. Super. Ct.*,
  135 Cal. App. 2d 352 (1955) ......................................................................................24

*Teselle v. McLoughlin*,
  173 Cal. App. 4th 156 (2009) .....................................................................................24

*Wagner v. Benson*,
  101 Cal. App. 3d 27 (1980) ........................................................................................21

**FEDERAL STATUTES**

12 U.S.C. §§ 1461, et seq......................................................................................... passim

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ...............................................................................8, 19

Cal. Bus. & Prof. Code § 17204 .....................................................................................19

Cal .Civ. Code 2923.6.......................................................................................................5

Cal. Civ. Code § 2923.5...................................................................................5, 6, 7, 12

Cal. Civ. Code § 2923.5(g) .............................................................................................12

Cal. Civ. Code § 2923.6 .......................................................................................... passim

Cal. Civ. Code § 2923.6(c) ......................................................................................14, 17

Cal. Civ. Code § 2923.6(g) ................................................................................15, 16, 17

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Cal. Civ. Code § 2923.6(h) ...........................................................................................14

Cal. Civ. Code § 2924.12(i) .............................................................................................7

Cal .Civ. Code § 2924.12(b) ............................................................................................7

Cal. Civ. Code § 2924.17 ..................................................................................................7

Cal .Civ. Code § 2924 *et seq.* ...........................................................................................6

**RULES**

Fed. R. Civ. P. 9(b) .........................................................................................................19

**REGULATIONS**

12 C.F.R. § 545.2 ..............................................................................................................4

12 C.F.R. § 560.2 ..............................................................................................................4

12 C.F.R. § 560.2(b) .....................................................................................................4, 8

12 C.F.R. § 560.2(b)(5) ...............................................................................................4, 10

12 C.F.R. § 560.2(b)(9) ...............................................................................................5, 10

12 C.F.R. § 560.2(b)(10) .........................................................................................5, 6, 10

61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996) .............................................................4

**OTHER AUTHORITIES**

5 Witkin, *California Procedure*, Pleading, § 821 (5th Ed. 2008) ..................................24

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **1.    INTRODUCTION.**

3    The Court should dismiss yet another meritless lawsuit that abuses and

4  misuses the recently-enacted Homeowners' Bill of Rights ("HBOR") in an effort to

5  delay the completion of a foreclosure sale.  Plaintiff Maria Teresa Ossa

6  ("Plaintiff") admits that she defaulted on her loan, admits that she did not tender

7  the amount of her default, and admits that she waited until the absolute last

8  possible moment to bring this lawsuit even though the allegedly wrongful conduct

9  occurred months and months ago.

10   Despite the striking length of her Complaint, it does not contain any

11 allegations that support the five claims for relief.  They are all defectively pled

12 under California law.  Moreover, they are preempted by the federal Home Owners'

13 Loan Act, 12 U.S.C. 1461 *et seq*. ("HOLA").  Given these incurable pleading

14 defects, the Court should grant this motion in its entirety without leave to amend

15 and dismiss this action with prejudice.

16   **2.    RELEVANT ALLEGATIONS AND FACTS.**

17   In November 2003, Plaintiff borrowed $338,900.00 from World Savings

18 Bank, FSB, the predecessor to Wells Fargo, pursuant to a written promissory note.

19 (Compl. ¶ 74.)[1]  A deed of trust on real property located at 9811 Fieldthorn Street

20 in San Diego secured the loan.  (*Id*.; RJN Exh. B.)

21   Plaintiff alleges that she was current on her loan until 2011 when, due to her

22 inability to secure permanent employment, she defaulted on the loan.  (Compl. ¶¶

23

24 ───────────────────

[1] World Savings changed its name to Wachovia Mortgage, FSB in January, 2008.
25 It underwent a second name change to Wells Fargo Bank Southwest, N.A. before
26 merging with Wells Fargo Bank, N.A. in November, 2009.  (RJN Exh. A contains
   copies of certificates issued by the Treasury Department's Office of Thrift
27 Supervision and Comptroller of the Currency acknowledging the original federal
28 savings bank charter, approving the name changes, and authorizing the merger, and
   an FDIC printout providing the history of World Savings.)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    75-76.)  As a result, the trustee under the deed of trust (defendant NDEx West,

2    LLC) recorded a Notice of Default in August 2011, showing a total default amount

3    of $14,955.50.  (Compl. ¶ 77, Exh. E.)  Plaintiff did not cure her default, so NDEx

4    recorded a Notice of Trustee's Sale in October 2011.  (Compl. ¶ 78, Exh. F.)

5        Plaintiff contacted Wells Fargo in an effort to avoid the foreclosure sale and

6    potentially obtain a loan modification.  (Compl. ¶ 79.)  Wells Fargo told Plaintiff

7    that she could apply for a loan modification and if she did so, it would not proceed

8    with the foreclosure sale.  Plaintiff applied for a loan modification and, over a

9    period of several months, submitted documentation requested by Wells Fargo to

10   verify her income and financial status.  (Compl. ¶¶ 80-82.)  After reviewing the

11   materials submitted by Plaintiff, Wells Fargo denied the loan modification because

12   Plaintiff had insufficient income.  Having held the foreclosure sale in abeyance for

13   six months during this process, Wells Fargo informed Plaintiff that the sale would

14   now proceed.  However, Plaintiff was able to reinstate the loan and bring her

15   payments current.  (Compl. ¶¶ 83-85.)  Shortly after reinstating her loan, however,

16   she once again went into default.  (Compl. ¶ 84.)

17       Sometime in late 2012, Plaintiff alleges that she secured employment that

18   increased her monthly income and also that she reduced her monthly expenses.

19   (Compl. ¶ 85.)  She informed Wells Fargo of this change and inquired once again

20   about a loan modification.  (Compl. ¶ 87.)  Plaintiff claims that Wells Fargo told

21   her she was "qualified" for a loan modification so she submitted an application and

22   the requested financial documents.  (Compl. ¶¶ 87-88.)  Plaintiff claims that Wells

23   Fargo never responded to her loan modification application.  Instead, Plaintiff

24   alleges that Wells Fargo proceeded with the foreclosure of her property by

25   recording a Notice of Default (the "NOD") in January 2013.  (Compl. ¶89, Exh.

26   G.)  Plaintiff did not take any further action to cure her default or demand a review

27   of her loan modification application, so NDEx recorded a Notice of Trustee's Sale

28   (the "NOTS") in April 2013.  (Compl. ¶ 90, Exh. H.)  Plaintiff then contacted

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Wells Fargo about the status of her application for a loan modification and was

2   told that Wells Fargo would review her request and postpone the foreclosure sale.

3   (Compl. ¶ 91.)

4          Ultimately, Plaintiff did not receive a loan modification, so NDEx proceeded

5   with the sale on June 24, 2013, at which the property was sold to a third party via a

6   Trustee's Deed Upon Sale ("TDUS").  (Compl. ¶ 94.)  Shortly thereafter, on July

7   1, 2013, Plaintiff's counsel sent a brief one-page letter to Wells Fargo in an effort

8   to stop the issuance and recordation of the TDUS by claiming that Plaintiff had

9   experienced a "material change in financial circumstances."  (Compl. ¶ 97, Exh.

10  D.)  Notably, this 'changed circumstance' was the exact same that was the basis of

11  Plaintiff's prior loan modification application in 2012.  (*Id*.)  Plaintiff then filed

12  this action in state court and secured an *ex parte* temporary restraining order to

13  prevent the recordation of the TDUS.  Wells Fargo removed the case to this Court.

### 3.    THE STATE LAW CLAIMS ARE PREEMPTED BY HOLA.

15         All five of Plaintiff's state law claims are preempted by HOLA.

### A.    As A Federally Chartered Savings Bank, World Savings Operated Under HOLA.

18         Plaintiff obtained the subject loan from Wells Fargo's predecessor World

19  Savings Bank, FSB in 2007.  (RJN Exhs. A, B.)  World Savings was a federal

20  savings bank regulated by the OTS.  (*Id*.)  As a federal savings bank, World Savings

21  was organized and operated under HOLA.  12 U.S.C. §§ 1461, et seq.[2]

---

[2]  HOLA still applies even though World Savings was ultimately merged into
Wells Fargo Bank, N.A. *Williams v. Wells Fargo Bank, N.A. et al*., 2013 U.S.
Dist. LEXIS 68615, at *9 (C.D. Cal. May 13, 2013) ("the same HOLA
preemption analysis applies even after the FSB merges into a national bank, as
long as the mortgage originated with an FSB"); *Gorton v. Wells Fargo Bank,
N.A.*, 2012 U.S. Dist. LEXIS 168158, at *12 (C.D. Cal. Nov. 27, 2012) ("the
relevant preemption analysis is unaltered by the merger of Wachovia [] with
Wells Fargo…  HOLA preemption continues to apply to loans originated by a
federal savings bank even after those banks are merged into national banking

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**B.     OTS Regulations Promulgated Under HOLA Preempt Any State Laws Which Affect Loan Origination, Disclosures, And Lending Regulation.**

Through its regulatory authority, the OTS "occupies the entire field of lending regulation for federal savings associations."  12 C.F.R. § 560.2.  OTS regulations issued pursuant to HOLA are "intended to preempt all state laws purporting to regulate any aspect of the lending operations of a federally chartered savings association, whether or not OTS has adopted a regulation governing the precise subject of the state provision."  *Lopez v. World Savings & Loan Ass'n*, 105 Cal. App. 4th 729, 738 (2003); *see* 12 C.F.R. § 545.2.

Preemption analysis under HOLA first determines whether the type of state law at issue appears on the list set forth in 12 C.F.R. § 560.2(b).  OTS Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).  That regulation lists the types of state laws that HOLA preempts.  If the type of state law in question appears on the list, the analysis ends there and the law is preempted.

**C.     State Laws Preempted By HOLA.**

Among the regulations that are "so pervasive as to leave no room for state regulatory control" are OTS regulation 560.2(b)(4), (5), (9) and (10).  These regulations preempt state laws that "would impose requirements on federal savings banks regarding":

> **(b)(4)  The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due**, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; 12 C.F.R. § 560.2(b)(4)
>
> **(b)(5) Loan-related fees, including without limitations, initial charges, late charges**, prepayment penalties, servicing fees, and overlimit fees; 12 C.F.R. § 560.2(b)(5)

associations"); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**(b)(9) Disclosure and advertising**, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants; 12 C.F.R. § 560.2(b)(9)

**(b)(10) Processing, origination, servicing**, sale or purchase of, or investment or participation in…**mortgages**; 12 C.F.R. § 560.2(b)(10).

### D.   HOLA Preempts The HBOR Claims (Civ. Code §§ 2923.55 and 2923.6).

Plaintiff's first and second claims are based on an asserted violation of the recently-adopted HBOR, specifically Civil Code sections 2923.55 and 2923.6(g). (Compl. ¶¶ 121-146.)  According to Plaintiff, Wells Fargo failed to comply with the pre-foreclosure contact requirements (Compl. ¶¶ 108-109) and failed to reevaluate her for a loan modification following a material change in financial circumstances (Compl, ¶ 137).  On its face, HBOR burdens lending by requiring a bank to consider modifying an existing loan and by preventing its ability to enforce a security interest until that process has been completed.  These requirements clearly fall within the ambit of C.F.R. § 560.2(b)(10) concerning the processing and servicing of mortgages and so are preempted.

The HBOR replaces and expands the burdens and remedies set forth in former § 2923.5, which also imposed conditions on a lender's ability to foreclose. District Courts considering that statute generally held that it was preempted, both before and after *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010).  *See*, *e.g.*, *Taquinod v. World Savings Bank, FSB,* 2010 U.S. Dist. LEXIS 127677, at *20 (C.D. Cal. Dec. 2, 2010); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022 (N.D. Cal. 2010).

Those holdings are instructive with respect to the application of HOLA to Civil Code 2923.6.  For example, one of the numerous pre-*Mabry* decisions was *Murillo v. Aurora Loan Servs.*, *LLC*, 2009 U.S. Dist. LEXIS 61791 (N.D. Cal. July

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

17, 2009), where the court dismissed a § 2923.5 claim, with prejudice, that alleged "Defendants failed to properly file a declaration with their notice of default."  The district court held that "[a]s applied, Plaintiffs' § 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage.  As such, the Court finds that Plaintiffs' § 2923.5 claim is preempted under HOLA."  *Murillo*, 2009 U.S. Dist. LEXIS 61791, at *11; *See also*, *Odinma v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 28347, at *23 (N.D. Cal. Mar. 23, 2010) (The Court held that a § 2923.5 claim "concerns the processing and servicing of Plaintiff's mortgage and is therefore preempted by HOLA.")   Similarly, in *Phat Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022 (N.D. Cal. 2010), the court relied in part on *Murillo* to find Section 2923.5 to be preempted even after *Mabry*.  *Id.* at 1032-33 (listing the federal district court decisions concluding that Section 2923.5 is preempted because the state law deals with contacting the borrower and requires a specific declaration in the Notice of Default such that it falls squarely within the scope of HOLA's Section 560.2(b)(10)).

Given the additional remedies now available to borrowers for alleged violations of the HBOR, a finding of preemption by HOLA is warranted not only by the many previous decisions by the District Courts with respect to section 2923.5, but also by the very holding in *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 226-232 (2010).  Prior to January 1, 2013, the *only* remedy available for a violation of the non-judicial foreclosure laws codified under Civil Code §§ 2923.5 and 2924 *et seq.* was equitable relief (*i.e.*, an order enjoining the foreclosure sale (prospectively) or rescinding it (retrospectively)).  There was no right to, for example, a loan modification or monetary damages. *Mabry*, 185 Cal. App. 4th at 232.  As a result, the *Mabry* court held that § 2923.5 was not preempted by HOLA because it was limited to affording borrowers only more time when lenders do not comply with the statute. *Id.* at 226.  Specifically, the *Mabry* court stated "[w]e emphasize that we are able to come to our conclusion that section 2923.5 is not

1    preempted by federal banking regulations because it *is*, or can be construed to be,

2    very narrow." *Id.* at 231 (emphasis in original).

3        Considering the substantial additional remedies now available for violation of

4    the HBOR, a narrow interpretation cannot possibly save the statute from

5    preemption. *See* Civil Code §§ 2924.12, and 2924.17.  These new remedies are

6    quite unlike the limited relief available under the previous section 2923.5.  For

7    example, Civil Code section 2924.12(b) provides for the imposition of monetary

8    damages against a lender or servicer:

9            A mortgage servicer, mortgagee, trustee, beneficiary, or
10           authorized agent shall be liable to a borrower for actual economic
             damages pursuant to Section 3281, resulting from a material
11           violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10,
             2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee,
12           beneficiary, or authorized agent where the violation was not
             corrected and remedied prior to the recordation of the trustee's
13           deed upon sale. If the court finds that the material violation was
             intentional or reckless, or resulted from willful misconduct by a
14           mortgage servicer, mortgagee, trustee, beneficiary, or authorized
             agent, the court may award the borrower the greater of treble
15           actual damages or statutory damages of fifty thousand dollars
16           ($50,000).

17

18       Additionally, a lender may now be required to pay attorney's fees to a

19   borrower *who merely obtained injunctive relief* in an action brought to enforce

20   section 2923.6. Civ. Code § 2924.12(i).

21       In addressing HOLA preemption of HBOR claims the Court in G*orton v.*

22   *Wells Fargo Bank  N.A*, 2013 U.S. Dist. LEXIS 86006, at *11 (C.D. Cal. June 3,

23   2013) ruled:

24           Plaintiff's HBOR claim is based solely on communications
25           regarding and actions or omissions related to either Plaintiff's
             application for loan modification, Wells Fargo's denial of that
26           application, or Plaintiff's appeal of the denial. (¶¶ 41-48.) Thus,
             the Court concludes that it falls within the preemptive scope of §
27           560.2(b)(4), which applies to "state laws purporting to impose
             requirements regarding . . . (4) the terms of credit, . . . including
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5
the circumstances under which a loan may be called due and
payable upon the passage of time or a specified event external to
the loan." Id. Moreover, were it not within these confines, the
Court would have no difficulty concluding that the law "affects
lending" and that it is not otherwise saved from preemption by
any subsection (c) category.

6
7
8
9
10
More recently, in *Kaplan v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS
109023, at *3 (C.D. Cal. July 30, 2013; J. Feess), the court held that a claim for
violation of HBOR is "premised on Defendants' alleged misconduct in 'processing,
originat[ing], servicing . . . or partici-pati[ng] in, mortgages' – activities subsection
(b) explicitly identifies as subject to HOLA preemption. 12 C.F.R. § 560.2(b)."

11
12
13
14
Thus, since the remedies that can be imposed for violation of the HBOR
exceed a "simple postponement," it cannot escape preemption under HOLA.  Thus,
the newly revised and enacted section 2923.6 is preempted under federal law and
cannot impose any affirmative obligations on Wells Fargo.

15
**E.**   **The Application of HOLA Preempts The Remaining State Law Claims.**

16
17
18
19
20
21
22
23
24
25
26
27
28
Plaintiff's remaining state law claims all contain similar allegations
involving preempted areas.  The claims advance some iteration of a violation of a
statutory obligation related to Plaintiff's request for a loan modification or the non-
judicial foreclosure on the Property.  In advancing those claims, Plaintiff alleges
that Wells Fargo: (1) failed to comply with the NMS Consent Judgment (Compl.
¶¶ 49-57), (2) charged inflated fees (Compl. ¶¶ 58-68), and (3) failed to reconsider
Plaintiff's application for a loan modification after a claimed "material change in
their financial circumstances." (Compl. ¶¶ 96-106).  The third claim alleges a
violation of Business & Professions Code section 17200, based on allegations that
Wells Fargo violated the NMS, failed to comply with Civil Code section 2923.6,
charges inflated fees, and foreclosed on the Property without legal justification.
(Compl. ¶ 152.)  The fourth claim for negligence asserts that Wells Fargo's
conduct constituted a breach of duty allegedly owed to Plaintiff.  (Comp. ¶ 167.)

1    Finally, Plaintiff alleges that she is entitled to an accounting to determine the actual

2    amount that they are in arrears on the loan.  (Compl. ¶¶ 182 -191.)  All of the

3    foregoing touch on preempted areas including the terms of credit, security

4    property, disclosures, and the processing and servicing of mortgages.  12 C.F.R.

5    §560.2(b) (4), (7), (9), (10).

6              Well-established case law confirms that such claims against Wells Fargo are

7    preempted.  State law claims regarding the processing of a loan modification are

8    also preempted.  For example, in *Sharma v. Wachovia*, 2011 U.S. Dist. LEXIS 1736

9    (E.D. Cal. Jan. 6, 2011), the plaintiff alleged various state law causes of action

10   against Wachovia Mortgage arising out of, among other things, "Defendant['s]

11   refus[al] to modify the loan."  *Id*. at *2.  Concerning HOLA preemption, the Court

12   ruled: "All four claims are preempted by HOLA."  *Id*. at *6.  Indeed, numerous

13   federal courts have found that HOLA preempts such claims against a lender arising

14   out of the processing of a loan modification application.  *Sato v. Wachovia Mortg.,*

15   *FSB*, 2011 U.S. Dist. LEXIS 75418, *20  (N.D. Cal. July 13, 2011) (dismissing

16   claim alleging that lender violated Civ. Code § 2923.6 by failing to modify her loan;

17   claim "clearly falls under the preemption provisions for 'processing, origination,

18   sale or purchase of ... mortgages' and 'terms of credit'" ); *Zarif vs. Wells Fargo*

19   *Bank, N.A.*, 2011 U.S. Dist. Lexis 29867, at *8-9 (S.D. Cal. Mar. 23, 2011) ("As

20   currently pled, each of Plaintiffs'  claims specifically challenge the processing of

21   Plaintiffs' loan modification application and servicing of Plaintiffs' mortgage, and

22   fall within the specific types of preempted state laws listed in § 560.2(b)(4) & (10).

23   Accordingly, each of Plaintiffs' claims are preempted by HOLA"); *DeLeon v. Wells*

24   *Fargo Bank*, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010) (HOLA preempted

25   fraud claims related to allegations that plaintiffs "were given false assurances that

26   their loan modification with Wells Fargo would be approved and that there would

27   be no foreclosure while the loan modification process was pending").

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Moreover, other state law claims addressing the loan servicing are also
2    preempted by HOLA.  State statutory and common laws punishing a lender for
3    making 'false financing statements' and fabricating loan documents are preempted
4    because such laws deal with, among other things, 'disclosures' under §
5    560.2(b)(9)."  *Tamayo v. World Savs. Bank, FSB, et al.*, 2009 U.S. Dist. LEXIS
6    73298, at *23 (S.D. Cal. July 23, 2009) (emphasis added); *Amaral v. Wachovia*
7    *Mortg. Corp.*, 692 F. Supp. 2d 1226, 1238 (E.D. Cal. 2010) ("Plaintiffs' fraud claim
8    alleges that Wachovia 'made false representations with the intent to induce
9    plaintiffs to make monthly mortgage payments to Wachovia.' (Doc. 24-2 at 8.) As
10   applied, this claim is also within § 560.2(b)(10)").  Additionally, the claims
11   concerning foreclosure related fees and their disclosure fall squarely within C.F.R.
12   § 560.2(b)(5).  *See, Gomez v. Wachovia Mortg. Corp.*, 2010 U.S. Dist. LEXIS 3799,
13   at **7-8 (N.D. Cal. Jan. 15, 2010).
14        For each of these reasons, Plaintiff's state law claims regarding the servicing
15   and processing of the loan are preempted by HOLA, and each claim should
16   therefore be dismissed without leave to amend.
17   **4.   IN ADDITION, THE COURT LACKS JURISDICTION OVER THE**
18        **NATIONAL MORTGAGE SETTLEMENT CONSENT JUDGMENT.**
19        Much of the Complaint advances the theory that Wells Fargo violated the
20   National Mortgage Settlement ("NMS") Consent Judgment.  (Compl., §VII, ¶¶55,
21   56, 152a, 167d, 173b, 174).  That argument is incorporated in most of Plaintiff's
22   claims for relief.  (A copy of the Consent Judgment and the enforcement terms is
23   attached to the RJN as Exh. C.)  However, no claim can prevail under an attempt to
24   enforce the Consent Judgment as it is only enforceable in the U.S. District Court
25   for the District of Columbia and only by a party to the Consent Judgment or the
26   Monitoring Committee.  (RJN Exh. C, Enforcement Terms at Section E:
27   "Servicer's obligations under this Consent Judgment shall be enforceable solely in
28   the U.S. District Court for the District of Columbia . . . by any Party to this

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Consent Judgment or the Monitoring Committee.").  The enforcement terms make

2   is clear that Plaintiff lacks standing to enforce the Consent Judgment as a nonparty,

3   and this Court lacks subject matter jurisdiction over the settlement.  As a result, to

4   the extent that Plaintiff's claims in the Complaint are based on allegations that

5   Wells Fargo's conduct was in violation of the Consent Judgment, all such

6   allegations should be ignored for the purpose of determining whether Plaintiff has

7   alleged a viable claim against Wells Fargo.  Ultimately, all such claims must be

8   dismissed to the extent they seek enforceable rights under the Consent Judgment.

9   ## 5.   THE COURT SHOULD DISMISS THE FIRST CLAIM.

10       Plaintiff alleges that Wells Fargo violated § 2923.55 by (1) failing to send

11  Plaintiff written notice of her possible rights under the federal Servicemembers'

12  Civil Relief Act (50 U.S.C. §§ 501 et seq.) and (2) failing to comply with the "due

13  diligence" requirements under § 2923.55(f).  (Compl. ¶¶ 127-128.)[3]  Plaintiff's

14  claim fails for several reasons.

15       First, both aspects of Plaintiff's claim fails because the alleged wrongdoing

16  occurred in 2012 when § 2923.55 was not yet in effect.  As the declaration attached

17  to the NOD indicates, the "due diligence" efforts by Wells Fargo occurred more

18  than 30 days before that declaration was signed on January 17, 2013.  (Compl.

19  Exh. G.)  Thirty days before January 17 was December 18.  Thus, Wells Fargo's

20  alleged failure to comply with that provision occurred before 2013.  Along the

21  same lines, if (as Plaintiff alleges) Wells Fargo failed to send Plaintiff written

22  notice of her possible rights under the federal Servicemembers' Civil Relief Act

23  more than 30 days before recording the NOD as required by § 2923.55, that

24  alleged failure would also have occurred in 2012.

25  _____

26  [3] Plaintiff actually claims two alternative violations of 2923.55(f).  First, that Wells
    Fargo did actually contact her so that it could not claim to have tried with 'due
27  diligence' to contract her, and second, that even if Wells Fargo had only tried to
    contact her with 'due diligence,' it failed to satisfy all the 'due diligence'
28  requirements.  (Compl. ¶ 129-130.)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    This is significant because § 2923.55, as part of HBOR, did not become

2    effective until January 1, 2013, and its provisions are not retroactive to 2012.  *See,*

3    *e.g., Guglielmelli v. Wells Fargo Bank, N.A.,* 2013 U.S. Dist. LEXIS 43063, at *10

4    (C.D. Cal. Mar. 26, 2013) ("There is no authority stating that these provisions of

5    HBOR [Cal. Civ. Code §§ 2923.55, 2923.6, and 2923.7] are to be applied

6    retroactively"); *McGough v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS

7    151737, at **16-17 (N.D. Cal. 2012) (citing the Legislative Counsel's Digest to

8    A.B. 278 and commenting that "there is no indication that the [HBOR] is intended

9    to be, or will be, applied retroactively").  Wells Fargo's alleged wrongful conduct

10   is not actionable under § 2923.55 because it had not yet become law and its

11   requirements do not apply retroactively.

12       Moreover, under former Civil Code § 2923.5, which was in effect until

13   December 31, 2012, there was no requirement that the bank provide notice of

14   Plaintiff's possible rights under the federal Servicemembers' Civil Relief Act.

15   Former § 2923.5 required only the following in terms of "due diligence":

> (g)… For purposes of this section, "due diligence" shall require and mean all of the following:
> (1)A mortgagee, beneficiary, or authorized agent shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.
> (2)(A)After the letter has been sent, the mortgagee, beneficiary, or authorized agent shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file…

24   Civ. Code § 2923.5(g).

25       Second, Plaintiff's other argument about a defect in the NOD is likewise

26   erroneous.  The NOD indicates that Wells Fargo tried with "due diligence" to

27   contact Plaintiff before recording the NOD in order to explore alternatives to

28   foreclosure.  (Compl. Exh. G.)  Plaintiff argues that the "due diligence"

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

12

1  requirement could not have been satisfied because Wells Fargo "did have contact

2  with Plaintiff" about her loan modification requests and therefore the "due

3  diligence requirements [were] not available to Wells Fargo."  (Compl. ¶ 117-118.)

4  Plaintiff's logic is mistaken.

5      Wells Fargo did contact Plaintiff to discuss possible loan modifications

6  options; there is no question about that.  But Wells Fargo did not communicate

7  directly with Plaintiff as required by the code regarding pre-NOD contacts.  The

8  communications are of two different types and two different purposes, and

9  northing in the Code demands that contact of one type satisfies contact of another.

10  Indeed, even § 2923.55 recognizes this fact at subsection (d) where it states that "A

11  mortgage servicer's loss mitigation personnel may participate by telephone during

12  any contact required by this section."  Thus, contact by the foreclosure processing

13  personnel at Wells Fargo, which handles the pre-NOD contacts requirements, is

14  separate and distinct from loss mitigation contact, and the code recognizes this

15  distinction.  Plaintiff's attempt to conflate the two types of contacts is meritless.

16  Her conclusory statement that she spoke with personnel at Wells Fargo does not

17  entail that Wells Fargo did not satisfy the pre-NOD due diligence requirement.

18      In addition, Plaintiff's allegations that Wells Fargo somehow engaged in

19  wrongful conduct by failing to disclose fees associated with the NOD and/or

20  charging "marked-up and/or unnecessary fees that were never incurred" is without

21  any merit.  (Compl. ¶ 154.)  These conclusory allegations fail to identify any

22  contract, statute, or other law that Wells Fargo supposedly violated.  Plaintiff's

23  allegations are spurious, immaterial, and contravene the basic rule of pleading that

24  a plaintiff must "put forward specific, nonconclusory factual allegations that

25  establish cognizable injury." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998);

26  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) (to survive a motion

27  to dismiss, a complaint must allege sufficient facts to cross "the line between

28  possibility and plausibility"); *In re Gilead Sciences Securities Litig.,* 536 F.3d

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  1049, 1055 (9th Cir.2008) (a court is not required "to accept as true allegations that

2  are merely conclusory, unwarranted deductions of fact, or unreasonable

3  inferences").

4  **6.   THE COURT SHOULD DISMISS THE SECOND CLAIM.**

5       Plaintiff alleges that she has not been fairly evaluated for a loan modification

6  even though she informed Wells Fargo that she has an increased salary and

7  decreased expenses.  (Compl. ¶ 137.)  Plaintiff alleges that this violates Civil Code

8  § 2923.6  Plaintiff's claim fails for several reasons.

9       First, Plaintiff's claim fails because § 2923.6 does not apply retroactively to

10  conduct that occurred prior to its enactment in 2013.  Plaintiff admits that she first

11  informed Wells Fargo <u>in 2012</u> of her increased salary and reduced expenses and

12  inquired about a loan modification based on her improved financial situation.

13  (Compl. ¶¶ 85-86.)  This happened before § 2923.6 became law on January 1,

14  2013.  Notably, § 2923.6 does not apply to conduct prior to its enactment, i.e.,

15  Wells Fargo was under no legal obligation to review Plaintiff in 2012 for a loan

16  modification even if she had actually experienced a change in financial

17  circumstances.  Therefore, the alleged failure of Wells Fargo to review Plaintiff for

18  a loan modification prior to the NOD, NOTS, and the TDUS is not actionable.

19       Second, even if Plaintiff had submitted her loan modification application in

20  2013, Plaintiff fails to allege her full compliance with § 2923.6 that would require

21  Wells Fargo to halt the foreclosure process and review her application.  Civil Code

22  § 2923.6 requires that borrowers submit a "**complete** application for a first lien

23  loan modification" before lenders or servicers are obligated to review them.  Civ.

24  Code § 2923.6(c) (emphasis added).  Subsection (h) states: "For purposes of this

25  section, an application shall be deemed 'complete' when a borrower has supplied

26  the mortgage servicer with all documents required by the mortgage servicer within

27  the reasonable timeframes specified by the mortgage servicer."  Civ. Code §

28  2923.6(h).  Nowhere in the Complaint does Plaintiff allege that she submitted a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   "complete" application to Wells Fargo.  Plaintiff alleges only that she "inform[ed]"

2   Wells Fargo of her "material change in circumstances" and "submitted" various

3   financial documents.  (Compl. ¶¶ 86-87.)  Plaintiff therefore did not comply with

4   the requirements of the statute, so Wells Fargo did not have to review her.

5          Third, Plaintiff's July 1, 2013 letter to Wells Fargo purporting to stop the

6   recordation of the TDUS is of no effect under § 2923.6 because Plaintiff did not

7   "document" her alleged change in financial circumstances along with the letter.

8   Civil Code § 2923.6 states that a mortgage servicer is not required to re-review an

9   application for a loan modification "unless there has been a material change in the

10  borrower's financial circumstances since the date of the borrower's previous

11  application and that change is <u>documented</u> by the borrower and submitted to the

12  mortgage servicer."  Cal. Civ. Code § 2923.6(g) (emphasis added).  Plaintiff

13  alleges that she complied with this statute by "documenting" a "material" change

14  via her July 1 letter from counsel and that Wells Fargo has not complied by failing

15  to review her for a loan modification.  (Compl. ¶ 97; Exh. D.)  Not so. The only

16  "document" provided by Plaintiffs to Wells Fargo was a letter sent by Plaintiffs'

17  counsel on July 1, 2013.  That letter contains only two substantive sentences that

18  relates to § 2923.6(g) regarding increased income and decreased expenses.  (*Id*.)

19  Plaintiff failed to provide any other information about how or why her income and

20  expenses changed.  Plaintiff failed to provide any 'documentation' to support this

21  claim, such as W-2s, profit and loss statements, tax returns, bills, invoices, etc.

22  Plaintiff provided no substance, no proof, no evidence that such a "material

23  change" has taken place.  Based solely on this one sentence in their letter, Plaintiff

24  alleges compliance with § 2923.6(g).

25         The failure to actually "document" this change, as is required by the Code, is

26  fatal to Plaintiffs' claim.  There can be no ambiguity about what it means to

27  'document' something.  See Mirriam-Webster, "English Dictionary," (2012) ("To

28  document: to provide something that serves as evidence or proof.")  Thus, it was

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    (and is) necessary for Plaintiff to provide more than just one letter containing a few

2    conclusory sentences.  Plaintiff needed to "document" her change in financial

3    circumstances with concrete and tangible evidence.  Any other reading of the plain

4    language of this statute would run afoul of the English language and divest the

5    word "document" of its plain and commonsense meaning.  "We give the words of

6    the statute 'a plain and commonsense meaning' unless the statute specifically

7    defines the words to give them a special meaning.  If the statutory language is clear

8    and unambiguous, our task is at an end, for there is no need for judicial

9    construction." *MacIsaac v. Waste Management Collection and Recycling, Inc.,*

10   134 Cal. App. 4th 1076, 1083 (2005) (citing *Flannery v. Prentice*, 26 Cal.4th 572,

11   577 (2001).  Since the statue did not specially define the word "document," it must

12   be given its ordinary English meaning.  Plaintiff's conclusory statement in her July

13   1 letter does not satisfy this meaning.

14       The full text of Civil Code § 2923.6(g) – as well as subsection (h) – lends

15   further support to this plain and commonsense meaning of the word "document."

16            (g) <u>In order to minimize the risk of borrowers submitting multiple</u>
            <u>applications for first lien loan modifications for the purpose of</u>
17            <u>delay</u>, the mortgage servicer shall not be obligated to evaluate
            applications from borrowers who have already been evaluated or
18            afforded a fair opportunity to be evaluated for a first lien loan
            modification prior to January 1, 2013, or who have been evaluated
19            or afforded a fair opportunity to be evaluated consistent with the
            requirements of this section, unless there has been a material
20            change in the borrower's financial circumstances since the date of
            the borrower's previous application and <u>that change is documented</u>
21            <u>by the borrower and submitted to the mortgage servicer</u>.
22            (h) For purposes of this section, an application shall be deemed
            "complete" when a borrower has supplied the mortgage servicer
23            with <u>all documents</u> required by the mortgage servicer within the
            reasonable timeframes specified by the mortgage servicer.
24

25

26

27   *Id*. (emphasis added).

28

The legislature made clear that it did not want § 2923.6 to be used solely for delay purposes.  Thus, <u>actual documentation</u> is required as evidenced in subsection (h) in order to entitle a borrower to a re-review for a loan modification.  Otherwise, borrowers would simply send in letter after letter without any documentation in order to delay a foreclosure sale – something the legislature explicitly and expressly wanted to avoid under § 2923.6(g).  Thus, no other meaning could be given to the word "document" than to require all borrowers, including Plaintiff, to submit more than just a letter.  Actual documentation of the "material change" is required – something Plaintiff did not do here.

Finally, the July 1, 2013 letter is of no effect under § 2923.6 because that code provision does not apply post-sale.  That section provides in relevant part:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent **shall not record a notice of default or notice of sale, or conduct a trustee's sale**, while the complete first lien loan modification application is pending.

Civ. Code § 2923.6(c) (emphasis added).

This provision does not provide any basis to prevent the issuance and/or recordation of the TDUS to the third party.  It would only prevent Wells Fargo from selling the property if Plaintiff had "documented" a "material change in financial circumstances" **<u>before the sale occurred</u>**.   It says nothing of conduct that happens once a sale is complete, such as the recordation of a TDUS.  The sale occurred on June 24, 2013, which was seven days **<u>before</u>** Plaintiff allegedly "documented" her material change in financial circumstances on July 1, 2013.  As such, § 2923.6 offers Plaintiff no relief because she did not comply with the requirements in a timely manner before the sale occurred.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

### 7.   **THE COURT SHOULD DISMISS THE THIRD CLAIM.**

Plaintiff sets forth a laundry list of allegations that she contends were "deceptive business practices with respect to mortgage loan servicing."  (Compl. ¶ 152.)  However, an Unfair Competition Law claim requires the pleading of some business practice that is forbidden by law, with particular facts showing ongoing unlawful, unfair, and fraudulent business acts. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Plaintiff's allegations fail to plead such a claim.

As noted above, Plaintiff's allegations related to enforcement of the NMS, are not actionable by Plaintiff, and thus cannot serve as a basis for alleging an unfair business practice.  Next, Plaintiff cannot rely on the alleged violation of Civil Code § 2923.6.  The deficiencies in that claim are also detailed above.  Plaintiff fails to provide any factual basis to support a claim that the foreclosure on the Property were "premature," or that the fees and charges assessed by Wells Fargo in connection with the foreclosure were not authorized by the loan documents or prohibited by statute.  Plaintiff makes the blanket accusation that Wells Fargo misrepresented the "foreclosure status," and concealed information regarding fees," but fail to provide any factual allegations to support these claims.  Additionally, Plaintiff fails to plead how Wells Fargo's alleged conduct prevented her from "pursuing other workout options."  (Comp. ¶¶ 152-160.)  Finally, Plaintiff makes the broad allegation that Wells Fargo did not have the "legal authority" to foreclose on the Property.  (Compl. ¶ 152.)  Aside from the asserted violation of section 2923.6, which Wells Fargo has refuted above, Plaintiff fails to provide any basis that would question Wells Fargo's right to foreclose upon Plaintiff's default.

There are no allegations that would support the fraudulent prong of the statute.  The "fraudulent" prong, post-enactment of Proposition 64, applies where a business act or practice actually misleads a plaintiff. *See Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 849 (2008).  It must be shown that members of the public "are likely

1   to be deceived." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).

2   Further, a plaintiff "must plead a claim for fraudulent behavior under the UCL with

3   particularity as required by Rule 9(b)." *Martinez v. Welk Group, Inc.*, 2011 U.S.

4   Dist. LEXIS 58718, at *22 (S.D. Cal. June 2, 2011).  Plaintiff fails to satisfy Federal

5   Rule of Civil Procedure Rule 9(b).  The names of the person or persons who

6   allegedly made the fraudulent representations, their authority to speak, to whom

7   they spoke, what they said or wrote, and when it was said or written are all omitted.

8   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

9       Similarly, Plaintiff's allegation fails to establish any "unlawful" or "unfair"

10  activity by Wells Fargo.  The "unlawful" prong borrows statutory or constitutional

11  claims from elsewhere. *Melegrito v. CitiMortgage Inc.*, 2011 U.S. Dist. LEXIS

12  60447, at * 24 (N.D. Cal. June 6, 2011).  "A defendant cannot be liable under §

13  17200 for committing 'unlawful business practices' without having violated another

14  law." *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050,

15  1060 (2005) (citations omitted).  The "unfair" prong applies when the practice at

16  issue allegedly violates "the policy or spirit of [anti-trust] laws because its effects

17  are comparable to a violation of the law, or that otherwise significantly threatens or

18  harms competition."  *Cel-Tech Comm'cns, Inc., v. L.A. Cellular Tel. Co.*, 20 Cal.4th

19  163, 187 (1999).  Even a cursory review of the Complaint reveals that it contains no

20  allegations which constitute either unlawful or unfair practices.  Plaintiffs rely on

21  defective statutory and common law claims in the Complaint to support the UCL

22  claim.  As noted herein, all of Plaintiff's claims are deficient.  Since the UCL claim

23  relies on defective statutory and common law claims, the claims are not saved by

24  recasting them as claims for unfair competition.

25      In addition, Plaintiff cannot show that she satisfies the causation requirement

26  of the UCL.  To bring a claim under the UCL, a plaintiff "must have suffered an

27  injury in fact and lost money or property as a result of … alleged unfair or fraudulent

28  practices."  Cal. Bus. & Prof. Code § 17204; *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  758, 788 (2010).  Plaintiff cannot make this necessary showing because the ultimate

2  reason for the delinquency was her overreach on loan she could not afford.  Plaintiff

3  opted to seek a loan modification that Wells Fargo did not guarantee and for which

4  she did not qualify.  In a similar situation, *DeLeon v. Wells Fargo Bank, N.A.*, 2011

5  U.S. Dist. LEXIS 8296 (N.D. Cal. 2011), held that the borrowers did not state a

6  claim for violation of UCL:

7           [T]he facts alleged suggest that Plaintiffs lost their home because
8           they became unable to keep up with monthly payments and lacked
           the financial resources to cure the default. Although the Court
9           understands Plaintiffs' frustrations with Wells Fargo's seemingly
           contradictory statements and actions, it does not appear that this
10          conduct resulted in a loss of money or property.

11

12  *DeLeon*, at *19-*22.  For the same reasons, Plaintiff fails to state a valid claim.

13         Finally, a "private person has no standing under the UCL unless that person

14  can establish that the injury suffered and the loss of property or money resulted from

15  conduct that fits within one of the categories of 'unfair competition'. . ."  *Daro v.*

16  *Superior Court*, 151 Cal. App. 4th 1079, 1098 (2007).  Plaintiff has not alleged, nor

17  has she suffered, an injury in fact or lost money or property as a result of Wells

18  Fargo's alleged unfair competition or unfair business practices.  There is an absence

19  of any causation of actual loss. *See Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 856

20  (2008).  If Plaintiff suffered any loss it was caused by the failure to repay the loan as

21  promised – not by Wells Fargo's alleged conduct.

22         **8.   THE COURT SHOULD DISMISS THE FOURTH CLAIM.**

23         Plaintiff alleges that Wells Fargo has (1) a general duty to "exercise

24  reasonable care and skill" in connection with the servicing of Plaintiff's loan and

25  the maintenance of her loan files and (2) a specialized duty of care given that it

26  "undertook to modify loans, including Plaintiff's loan."  (Compl. ¶¶ 167-168.)

27  Both of Plaintiff's allegations are incorrect as a matter of law.

28

1     First, there is no 'general duty of care' as Plaintiff seeks to attach in this

2  case.  Actionable negligence requires: (1) a legal duty to use due care; (2) a breach

3  of that duty; and (3) the breach as the proximate or legal cause of the resulting

4  injury.  *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095

5  (1991).[4]  California law is clear: "as a general rule, a financial institution owes ***no***

6  ***duty of care to a borrower*** when the institution's involvement in the loan

7  transaction does not exceed the scope of its conventional role as a mere lender of

8  money."  *Id*. (emphasis added); *Resolution Trust Corp. v. BVS Dev*., 42 F.3d 1206,

9  1214 (9th Cir. 1994) ("a lender does not owe a borrower or third party any duties

10  beyond those expressed in the loan agreement, excepting those imposed due to

11  special circumstance or a finding that a joint venture exists.").

12     Since lenders do not normally owe a duty of care to their borrowers, loan

13  modification, which is a normal part of the lender-borrower relationship, does not

14  create any new duties.  In *Dooms v. Fed. Home Loan Mortg. Corp*., 2011 U.S.

15  Dist. LEXIS 38550, 24-25 (E.D. Cal. Mar. 30, 2011), the plaintiff-borrower had

16  "experienced financial difficulties" and requested a loan modification.  After a

17  foreclosure sale was completed, the plaintiff sued her lender for negligence. The

18  *Dooms* court found that "[t]here is ***no actionable duty between a lender and***

19  ***borrower*** in that loan transactions are arms-length."  *Id.* at 25 (emphasis added).

20  "A lender 'owes no duty of care to  the [borrowers] in approving their loan.

21  Liability to a borrower for negligence arises only when the lender "actively

22  participates" in the financed enterprise "beyond the domain of the usual money

23  lender."  *Id.* at 25-26 (*citing Wagner v. Benson,* 101 Cal. App. 3d 27, 35 (1980);

24

---

25  [4] "The determination of whether a duty exists is primarily a question of law."  *Id.*

26  "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant."  *Software*

*Design and Application Ltd. v. Hoeffer & Arnolt, Inc.*, 49 Cal. App. 4th 472, 481

27  (1996).  The inability to plead a duty of care "precludes his maintenance of a claim

28  for relief on any negligence theory."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326,

349 (1997).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   *Nymark*, 231 Cal. App. 3d at 1096 ["as a general rule, a financial institution owes

2   no duty of care to a borrower when the institution's involvement in the loan

3   transaction does not exceed the scope of its conventional role as a mere lender of

4   money"]; and *Meyers v. Guarantee Sav. & Loan Ass'n.*, 79 Cal. App. 3d 307, 312

5   (1978) [no lender liability when lender did not engage "in any activity outside the

6   scope of the normal activities of a lender of construction monies"]).

7         Second, there is simply nothing to suggest that Wells Fargo did anything

8   that "exceed[ed] the scope of its conventional role as a mere lender of money" in

9   terms of either the loan origination or the attempted loan modification. *Nymark*,

10   231 Cal. App. 3d at 1096.  Wells Fargo loaned Plaintiff money.  Thereafter,

11   Plaintiff sought to modify the terms of the loan.  Wells Fargo engaged in loan

12   modification discussions but ultimately did not provide a loan modification.

13   Notably, "loan modification is an activity that is 'intimately tied to Defendant's

14   lending role.'" *Johnston v. Ally Fin., Inc*., 2011 U.S. Dist. LEXIS 83298, at **10-

15   11 (S.D. Cal. July 29, 2011) (*quoting Karimi v. Wells Fargo*, 2011 U.S. Dist.

16   LEXIS 47902, at *7 (C.D. Cal. 2011)) (dismissing negligence claims where "[t]he

17   complaint only alleges that Plaintiffs attempted to enter into an arms-length

18   transaction with [lender] for a loan modification and does not contain any facts

19   showing special circumstances that would require imposing a duty on [lender]");

20   *Ottolini v. Bank of Am.*, 2011 U.S. Dist. LEXIS 92900, at **12-20 (N.D. Cal. Aug.

21   19, 2011) (dismissing the negligence claim based on alleged mishandling of loan

22   modification applications finding there was no duty of care owed to the borrower

23   with respect to his attempt to submit a loan modification application); *Armstrong v.

24   Chevy Chase Bank, FSB*, 2012 U.S. Dist. LEXIS 144125, at *14 (N.D. Cal. Oct. 3,

25   2012) ("a loan modification, which at its core is an attempt by a money lender to

26   salvage a troubled loan, is nothing more than a renegotiation of loan terms. … For

27   this reason, '[n]umerous cases have characterized a loan modification as a

28   traditional money lending activity"); *Settle v. World Savs. Bank, FSB*, 2012 U.S.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Dist. LEXIS 4215, at *10 (C.D. Cal. Jan.11, 2012) (noting the "overwhelming

2   weight of authority" that loan modification does not give rise to a duty of care on

3   the part of the lender and granting motion to dismiss).  Here, nothing  in the

4   parties' interactions suggests that Wells Fargo went beyond its conventional role as

5   money lender that would impose a legal duty of care.

6        Finally, Plaintiff alleges in passing that Wells Fargo's breached "the

7   provisions of HAMP."  (Compl. ¶ 176.)  However, the HAMP contract is an

8   agreement between the federal government and participating lenders and there is

9   no legal requirement for Wells Fargo to modify Plaintiff's loan under HAMP.

10  *Nong v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. Lexis 136464 (C.D. Cal. Dec. 6,

11  2010). "Lenders are not required to make loan modifications for borrowers that

12  qualify under HAMP nor does the servicer's agreement confer an enforceable right

13  on the borrower."  *Id.* at *10; *Hoffman v. Bank of America, N.A.*, 2010 U.S. Dist.

14  LEXIS 70455, at *15 (N.D. Cal. June 30, 2010) (citing cases; construing Wells

15  Fargo's HAMP agreement).  Therefore, "numerous district courts have interpreted

16  identical HAMP agreements and have come to the conclusion that a borrower is

17  not a third party beneficiary."  *Id.* (citing cases).  Numerous courts have also ruled

18  that a borrower does not have standing to sue its lender for alleged violation of the

19  lender's HAMP agreement.[5]

20        **9.   THE COURT SHOULD DISMISS THE FIFTH CLAIM.**

21        Plaintiff seeks an accounting to determine "the actual amount of the

22  arrearages on Plaintiff's loan."  (Compl. ¶ 191.)  This claim is little more than a

23  rehash of Plaintiff's allegation that Wells Fargo intentionally inflated its

24  foreclosure fees in order to increase its profit if Plaintiff were to pay the full

25

26

27  [5] *See, e.g., Aleem v. Bank of Am.*, 2010 U.S. Dist. LEXIS 11944, at **8-10 (C.D.
    Cal. Feb. 9, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist.
28  LEXIS 117017 at *4-5 (S.D. Cal. Dec. 15, 2009).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  amount listed in the NOD.  As explained above, these conclusory allegations are
2  without merit.

3       This claim fails for two additional reasons.  First, "an accounting is a
4  'species of disclosure, predicated upon the plaintiff's legal inability to determine
5  how much money, if any, is due.'  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156,
6  180 (2009).  To state an accounting claim, a complaint must set forth facts to show:
7  (1) fiduciary relationship or other circumstances appropriate to the remedy and
8  (2) a balance due from the defendant to the plaintiff that can only be determined by
9  an accounting.  *Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934).  A claim does
10  not lie when there is an adequate remedy at law, or all the facts necessary for
11  calculation of the amount are alleged or within the plaintiff's knowledge.  *St.*
12  *James Church v. Super. Ct.*, 135 Cal. App. 2d 352, 359 (1955). Traditionally,
13  courts permit an accounting in cases involving trusts, agency relationships,
14  partnerships and joint ventures. 5 Witkin, *California Procedure*, Pleading, § 821
15  (5th Ed. 2008); *San Pedro Lumber Co. v. Reynolds*, 111 Cal. 588, 595 (1896)
16  (accounting claim allowed where defendant was the trusted agent of plaintiff,
17  acting in a fiduciary capacity, and having for a long period of time the entire
18  charge and control of plaintiff's business).  Finally, "[a] suit for an accounting will
19  not lie where it appears from the complaint that none is necessary or that there is
20  an adequate remedy at law."  *St. James Church of Christ Holiness v. Superior*
21  *Court*, 135 Cal.App.2d 352, 359 (1955).

22       Here, Plaintiff satisfies neither of the necessary elements for an accounting
23  claim.  First, a lender does not have a "special" or fiduciary relationship with its
24  borrowers.  *Price v. Wells Fargo Bank,* 213 Cal. App. 3d 465, 476 (1989).  The
25  relationship between Wells Fargo and Plaintiffs is one of an arms-length
26  transaction, nothing more.  Second, Wells Fargo does not owe anything to Plaintiff
27  – on the contrary, Plaintiff owes money to Wells Fargo. In fact, Plaintiff admits
28

1    that the "actual amount of arrearages on Plaintiff's loan and the actual amount of

2    money due from Plaintiff to Defendants … is unknown . . ."  (Compl. ¶ 191.)

3         Furthermore, Plaintiff seeks an accounting of the actual amount of the

4    arrearages on the loan.  (Compl. ¶ 191.)  This is improper.  The NOD permits the

5    borrower to request a written itemization of the entire amount the borrower must

6    pay to cure the default.  (Compl. Exh. G.)  Plaintiff fails to plead that she made

7    such a request, or that Wells Fargo refused to response to Plaintiff's request.

8    Failing to avail herself of the opportunity to obtain information relating to the

9    amount in arrears, Plaintiff cannot now seek to halt the foreclosure process,

10   authorized by statute, simply by asserting a claim that she disputes the amount in

11   arrears that appears in the NOD, which was recorded months ago

12        Finally, an accounting from Wells Fargo is not necessary in this case

13   because the relationship between the parties has been extinguished with the

14   completion of the foreclosure sale. "A properly conducted nonjudicial foreclosure

15   sale constitutes a final adjudication of the rights of the borrower and lender."

16   *Moeller v. Lien*, 25 Cal. App. 4th 822, 834 (1994); *Nguyen v. Calhoun*, 105 Cal.

17   App. 4th 428, 440–441 (2003) ("As a general rule, a trustee's sale is complete upon

18   acceptance of the final bid.")  Therefore, the contractual relationship has ended.

19                          **10.  <u>CONCLUSION.</u>**

20        All five claims in the Complaint are defectively pled and cannot be cured by

21   amendment.  Wells Fargo requests that the Court grant the motion in its entirety

22   without leave to amend and dismiss this action with prejudice.

23                                  Respectfully submitted,

24   Dated:  August 6, 2013          ANGLIN, FLEWELLING, RASMUSSEN,
                                     CAMPBELL & TRYTTEN LLP
25

26                                  By: ____s/ David Newman_____
                                         David Newman
27                                  Attorneys for WELLS FARGO

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

**CERTIFICATE OF SERVICE**

2

3        I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

4

5        On the date below, I served a copy of the foregoing document entitled:

6        **WELLS FARGO'S MOTION TO DISMISS COMPLAINT;**
         **MEMORANDUM OF POINTS AND AUTHORITIES**

7

8     on the interested parties in said case as follows:

9        *Served Electronically Via the Court's CM/ECF System:*

10       *Counsel for Plaintiff:*              *Counsel for Defendant*
                                              *NDeX WEST, LLC:*

11

12       Joseph R. Manning, Jr.               Edward A. Treder, Esq.
         THE LAW OFFICES OF                   edwardt@bdfgroup.com
         JOSEPH R. MANNING                    BARRETT DAFFIN FRAPPIER

13       4667 MacArthur Blvd., Suite 150      TREDER & WEISS, LLP
         Newport Beach, CA  92660             20955 Pathfinder Road, Suite 300

14       Tel:  (949) 200-8755                 Diamond Bar, CA  91765
         Fax:  (866) 843-8308                 Tel:  (626) 915-5714

15                                            Fax:  (909) 595-7640

16

17       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on August 6, 2013.

18

19

20       Vanessa Ngo

21       (Type or Print Name)                 (Signature of Declarant)

22

23

24

25

26

27

28