Joseph R. Manning, Jr. (SBN: 223381)
Babak Hashemi (SBN: 263494)
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Suite 150
Newport Beach, California 92660
Tel: 949.200.8755; Fax: 866.843.8308
ecf@manninglawoffic.com

Attorneys for Plaintiff, MARIA TERESA OSSA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA TERESA OSSA, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO MORTGAGE, a DIVISION OF Wells Fargo Bank, N.A., a business entity form unknown, NDEX WEST, LLC A BUSNIESS ENTITY FORM UNKNOWN, and DOES 1-100, inclusive,<br><br>Defendants. | CASE No: 3:13-cv-1776 BEN BLM<br><br>[Assigned to the Hon. Roger T. Benitez]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [F.R.C.P. 12(B)(6)]**<br><br>Date:   September 16, 2013<br>Time:  10:30 a.m.<br>Ctrm.:  5A |

**TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiff MARIA TERESA OSSA (hereinafter "Plaintiff"), hereby opposes Defendant, WELLS FARGO MORTGAGE'S ("WELLS FARGO") Motion to Dismiss Plaintiff's Complaint for failure to state a claim.

Case No. 13 CV 1776

1

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Defendant's Motion attempts to wipe out all of Plaintiff's claims with a flawed preemption argument in order to bypass lack of diversity jurisdiction and attempts to argue Plaintiff's claims fail because the relevant allegations cannot be applied retroactively; however, Plaintiff's injuries were sustained in 2013 as a result of Defendants' wrongful conduct which also occurred after January 1, 2013.

Plaintiffs filed a complaint against WELLS FARGO and NDEX WEST, LLC ("Defendants") for violations of California Civil Codes §§2923.6, 2923.55, Violations of California Business & Professions Code §17200, Negligence and a demand for Accounting. As a threshold matter, Plaintiffs have suffered injury in fact in 2013 as a direct result of Defendants' violations of California Civil Code §§ 2923.55, 2923.6 and Negligence; none of which, are predicated on the National Mortgage Settlement.

Additionally, Defendants' violations of §2923.6 and wrongful foreclosure of the property commonly known as 9811 Fieldthorn Street, San Diego, CA 92127 (the "Subject Property") occurred in 2013; therefore, Defendant's claims of retroactivity are irrelevant. Moreover, Defendants' unlawful foreclosure of the Subject Property does not render Plaintiff's claims as moot because, under these circumstances, Plaintiff is entitled to monetary damages and attorneys' fees under the Home Owners' Bill of Rights.

Defendant has failed to address Plaintiff's allegations regarding violations of §§ 2923.55, 2923.6, 17200 and Negligence. Defendant's moving papers admit to recording a false declaration of compliance with the Notice of Default ("NOD") and receiving financial documentation supporting Plaintiff's material change in financial circumstances in 2013, which complies with Civl Code §2923.6(h).

As for the issue of tender, if this court is inclined to require tender, Plaintiff is

ready, willing and able to make a credible offer of tender in the amended complaint.

## II. FACTUAL BACKGROUND

This case was filed following a wrongful foreclosure on the Subject Property on June 24, 2013; after Defendant was on actual notice of Plaintiff's material change in financial circumstances and after Plaintiff had submitted a request for a foreclosure alternative. On or about July 11, 2013, prior to the recordation of the Trustee's Deed upon Sale, Plaintiff moved *ex parte* and successfully obtained a Temporary Restraining Order preventing Defendants from proceeding to complete the wrongful foreclosure activity initiated on the Subject Property.

During late 2012, following a brief period of unemployment, Plaintiff secured employment providing a monthly income of approximately $4,000, financial contribution from Plaintiff's mother in the amount of $1,500 a month, coupled with a significant reduction of her monthly expenses.

In or around December 2012, Plaintiff informed Defendant Wells Fargo of her material change in financial circumstances and inquired about a loan modification. Wells Fargo, through its representative, informed Plaintiff that she "qualified" for a loan modification and promised Plaintiff that if she submitted a complete loan modification application, then no foreclosure activity would proceed while her application was in review. Based on this representation, Plaintiff submitted a loan modification application to Wells Fargo and provided the required financial documentation. The submission of this financial documentation occurred over a period of a few weeks taking the process past January 1, 2013. By late January 2013, Plaintiff had submitted all the requested documentation; thus a loan modification application evidencing Plaintiff's material change in financial circumstances was completed and submitted after January 1, 2013. Plaintiff submitted the requested financial documents, completing her application, directly to

Wells Fargo via facsimile. While Wells Fargo's did not ever confirm the completion of the application; they did not request additional documents from Plaintiff.

After a complete loan modification application was in the possession of Wells Fargo, Defendants executed a NOD and Election to Sell Under Deed of Trust against the Subject Property. See Exhibit **G** to Plaintiff's complaint; a true and correct copy of the NOD, recorded on January 30, 2013.

On or about April 26, 2013, Defendants executed a Notice of Trustee's Sale against the Subject Property, with a scheduled sale date of May 23, 2013. See Exhibit **H** to Plaintiff's complaint, a true and correct copy of the NTS, recorded on April 30, 2013.

Frantic to avoid the sale of her home, Plaintiff contacted Wells Fargo to inquire about the financial documents already submitted which documented her change in financial circumstances. Plaintiff also communicated her willingness to withdraw funds from her Individual Retirement Account ("IRA") to reinstate the Loan. Wells Fargo's representative responded and informed Plaintiff that they would review her requests and postponed the sale date.

Over the next six (6) weeks, Plaintiff repeatedly contacted Wells Fargo requesting updates on the loan modification review process initiated earlier in 2013; however, Plaintiff was unable to reach a representative who was able or willing to provide her with concrete information regarding the status of her review or the pending foreclosure.

On or about June 24, 2013, Defendants conducted a non-judicial foreclosure sale of the Property in violation of Civ. Code §2923.55, 2923.6 (c) (This conduct is also known as Dual Tracking).

Case No. 13 CV 1776

4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## II. ARGUMENT

### A. DEFENDANT'S CLAIMS FOR DISMISSAL ARE WITHOUT MERIT

The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court noted that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which they base their claim. To the contrary, all the Rules require is 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests."

In ruling on a motion to dismiss, the Court must accept all material allegations of fact alleged in the complaint as true and resolve all doubts in favor of Plaintiff. (*Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir. 1998)). The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a)(2)] Moreover, the Rules require a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Motions to dismiss are disfavored, as there exists "'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*. In considering a motion to dismiss, a district court must take as true all well-pleaded allegations of material fact and must construe them in the light most favorable to the plaintiff. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). A

court also must take into account all inferences supporting the complaint that a trier of fact reasonably could draw from the evidence. See *Id*.

Even applying the standard set by the case of *Bell Atlantic Corporatin v. Twombly* 550 U.S. 544 (2007) which requires that complaint should have enough factual matter, not just labels, conclusions, and formulaic recitation of the elements of cause of action, the instant case has still sufficient and enough facts to state a claim of relief that is tenable on its face.

With regards to foreclosure-related case, the Ninth Circuit stated that "[c]omplaints need only allege facts with sufficient specificity to notify defendants of Plaintiffs' claims." *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 790 (9th Cir. 2011). "[S]o long as the plaintiff alleges facts to support a theory that is not factually implausible, the court's skepticism is best reserved for later stages of the proceedings when the Plaintiff's case can be rejected on evidentiary grounds." *Id*. at 791 Quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Here, Plaintiff has stated and identified in the Complaint the Defendants and enumerated the different causes of action against them with sufficient factual support. A complaint may not be dismissed if there is any set of facts set forth in the complaint which will support a cause of action. When a Court rules on motion to dismiss, it must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the Plaintiff. In fact, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." [*Bernheim v. Litt,* 79 F.3d 318(1996)].

## B. **PLAINTIFF'S CLAIMS ARE NOT PREEMPTED.**

Wells Fargo Voluntarily Invoked California's Non-Judicial Foreclosure Laws. The courts are already divided on whether some of these borrower-protective trustee sale statutes are preempted by federal laws that regulate savings and loan

Case No. 13 CV 1776

associations and national banks. Here, since the foreclosure is not yet completed (Trustee's Deed upon Sale has not yet been issues and/or recorded) Plaintiff's proper remedy is identical to the remedy provided for under California Civil Code §2923.5, postponement of the trustee sale. *Mabry* concluded that section 2923.5 escaped federal preemption because "the *process of foreclosure* has traditionally been a matter of state real property law." (*Mabry v. Superior Court*, (2010) 185 Cal. App. 4th 208).

One has to remember that Wells Fargo voluntarily invoked the remedy of California non-judicial foreclosure law. It voluntarily chose to utilize and subject itself to the requirements of California law, specifically California Civil Code § 2924 *et seq*. Claiming federal preemption, Wells Fargo now wants to exempt itself from non-judicial foreclosure's procedural requirements, or at least the ones it does not like.

The critical question in any preemption analysis is always whether Congress intended that federal regulation supersede state law. The starting presumption is that Congress has not intended federal preemption. Even *Mabry v. Superior Court* also holds that HOLA does not apply, nor does federal preemption. In this case, Wells Fargo's California State Law based non-judicial foreclosure of Plaintiff's home has no relationship to the organization of the bank, its internal operations or federal oversight. The logical conclusion of accepting Wells Fargo's preemption argument is that Wells Fargo's foreclosure remedies, because of HOLA, are in federal court.

Another logical conclusion is that Wells Fargo should be precluded from utilizing California non-judicial foreclosure law in its entirety, due the requirements of California non-judicial foreclosure law and its alleged conflict with HOLA. In other words, due to federal preemption, the non-judicial foreclosure which Wells Fargo initiated in January 2013, is void. Wells Fargo's sole recourse, due to federal

Case No. 13 CV 1776

7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

preemption, is *judicial* foreclosure in federal court. By Wells Fargo's own argument, the Notice of Default and the Notice of Trustee Sale are both void *ab initio*.

### 1. Wells Fargo Does Not Operate Under HOLA

Wells Fargo urges the Court to analyze preemption of Civil Code §§ 2923.55 and 2923.6 under the Home Owners Loan Act ("HOLA") and its attendant Office of Thrift Supervision ("OTS") regulations. This analysis is wrong: Wells Fargo's only ground for preemption arises from the National Banking Act (NBA).

Preemption of state law by national banks is analyzed under the OCC conflict preemption standards set forth in the NBA. *See Aguayo v. U.S. Bank, N.A.*, 653 F.3d 912, 921-22 (9th Cir. 2011). In this case, plaintiff's loan was originally held by World Savings Bank, which became Wachovia, which eventually merged with Wells Fargo. Because Wells Fargo currently holds the loan, is directly responsible for the foreclosure process, and is a national bank, the NBA and OCC regulations apply. The fact that the loan originated with World Savings, a federal savings association, does nothing to change this analysis.[1] The central allegation in this case—Wells Fargo's noncompliance with Civil Code § 2923.6—is attributable solely to the foreclosure actions of Wells Fargo and has nothing to do with the origination activity of World Savings. *See Gerber v. Wells Fargo Bank, N.A.,*, 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012).

---

[1] The court in *Gerber v. Wells Fargo Bank, N.A.*, criticized the cases relied on by Wells Fargo to support the claim that World Savings and Wachovia somehow bestow HOLA preemption to Wells Fargo because the "cases cite either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire." 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012). As the court noted, "preemption is not some sort of asset that can be bargained, sold, or transferred." *Id.*; *see also Albizo v. Wachovia Mortg.*, 2012 WL 1413996, at *15 (E.D. Cal. Apr. 20, 2012) (HOLA is not a privilege that can "trickle[...] down" to a loan's successor in interest).

Case No. 13 CV 1776

Even if Wells Fargo were correct that the preemption analysis applicable to federal savings associations is appropriate here, its reliance on the HOLA preemption standard is misplaced because Congress amended HOLA in 2011 as a part of the Dodd-Frank Wall Street Reform and Consumer Protection Act to conform HOLA preemption standards to the NBA conflict preemption standard. *See* 12 U.S.C. § 1465(a) (2012) ("Any determination by a court . . . regarding the relation of State law to [federal savings associations] shall be made in accordance with the laws and legal standards applicable to national banks regarding the preemption of State law.").

Wells Fargo's argument that the Home Owners' Loan Act preempts its obligations under California's Home Owners Bill of Rights is misguided. Under HOLA, the Office of Thrift Supervision ("OTS") issued 12 C.F.R. section 560.2, which states that the "OTS hereby occupies the entire field of lending regulation for federal savings associations," thereby permitting federal savings associations to extend credit "without regard to state laws purporting to regulate or otherwise affect their credit activities ..." 12 C.F.R. § 560.2(a). Section 560.2 "preempts any state law which purports to regulate the lending activities of federal savings associations." *Harris v. Wachovia Mortgage, FSB*, 185 Cal. App. 4th 1018, 1025 (2010) (citation omitted).

Wells Fargo is organized and operates as a national association, as such not subject to or regulated by HOLA regulations. Defendant's motion expressly admits effective November 1, 2009, Wachovia Mortgage, FSB, became a division of Wells Fargo Bank, N.A. Furthermore, Under HOLA, the Office of Thrift Supervision ("OTS") issued 12 C.F.R. section 560.2, which states that the "OTS hereby occupies the entire field of lending regulation for federal savings associations," thereby permitting federal savings associations to extend credit "without regard to state laws

purporting to regulate or otherwise affect their credit activities ..." 12 C.F.R. § 560.2(a). Section 560.2 "preempts any state law which purports to regulate the lending activities of federal savings associations." *Harris v. Wachovia Mortgage, FSB*, 185 Cal. App. 4th 1018, 1025 (2010) (citation omitted).

Specifically, 12 C.F.R. §560.2(b) states some of the specific types of state laws that are preempted by HOLA, including those related to sections 4 and 10 of this section. Section 4 states: The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; and section 10 includes Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

Additionally, §560.2(c) identifies specific fields of State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;
(2) Real property law;
(3) Homestead laws specified in 12 U.S.C. 1462a(f) ;
(4) Tort law;
(5) Criminal law; and
(6) Any other law that OTS, upon review, finds:
    (i) Furthers a vital state interest; and
    (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

Plaintiff's claims and remedies under the complaint fall under Real Property and Tort Law; therefore, even if HOLA did apply, which it does not, Plaintiff's claims would not be preempted here.

### B. Plaintiff Has Alleged Sufficient Facts for a §2923.6 Claim

Defendant's violation under this code section is twofold. First, Defendants continued their foreclosure activity after being notified of Plaintiff's material change in financial circumstances, therefore, engaging in dual tracking; and Second, Defendant's failed to make a determination whether Plaintiff qualifies for a foreclosure alternative after acceptance of Plaintiffs' first lien loan modification application which was deemed completed in January 2013.

There is no dispute that Plaintiff has experienced a material change in her financial circumstances. Now, pursuant to the Homeowner's Bill of Rights, specifically *Civil Code* §2923.6, Wells Fargo is compelled to review Plaintiff's modification application and cease to continue all foreclosure activity. As stated Plaintiff first communicated her change in financial circumstances to Wells Fargo by telephone in December 2012. Following this oral notice, Plaintiff submitted an application to Wells Fargo. Plaintiff concedes that the application was not complete until January 2013, when she had finally submitted all the requested financial documents in support for her application. Hence, the application was complete after January 1, 2013 and Civ. Code §§ 2923.6 (c), (g) and (h) are applicable.

Wells Fargo must now review Plaintiff for a foreclosure alternative and may not continue foreclosure activity on the Subject Property until they have exhausted an appeal of their written denial, as set forth in *Civil Code* §2923.6(c). Wells Fargo has been in possession of Plaintiff's complete loan modification application, documents supporting Plaintiff's material change in finances since January 2013 and has not considered Plaintiff for a foreclosure alternative.

The intent of the California legislators in enacting *Civil Code* §2923.6 was to address the consequences of the subprime mortgage crisis leading to declining real property values and historic levels of foreclosure. As a result of the above-

described violations, the foreclosure sale of Plaintiffs' property must be postponed, until Defendant has complied with *Civil Code* §2923.6 <u>which does not require an offer of tender.</u>

As set forth in Plaintiff's complaint, her financial circumstances have materially changed for the better. Plaintiff financial packet, substantiating the change in income was completed in January 2013. Accordingly, pursuant to Civil Code §2923.6, under the California Homeowner's Bill of Rights, Defendant Wells Fargo is obligated to actually evaluate Plaintiff for any and all foreclosure prevention alternatives, including a loan modification, based on this material change in their financial circumstances.

The foreclosure activity alleged in complaint is also a violation of California *Business and Professions Code* §17200 as "unlawful" and "unfair" business practices. Pursuant to the provisions of *Civil Code* §2924g(c)(1)(A), a foreclosure sale may properly be postponed by order of a Court of competent jurisdiction such as this Federal District Court.

### C. <u>Plaintiff Has Sufficiently Stated Facts for a Violation Of California Business and Professions Code section 17200.</u>

Plaintiff has pleaded specific facts in support of this cause of action and clearly suffered injury in fact, including loss of equity in their home (by growth in amounts of delinquent interest, declining property value and inflated fees), costs and expenses related to protecting themselves, fees and costs, including, without limitation, attorneys' fees and costs and higher cost of obtaining credit due to the deterioration of their credit scores.

Plaintiff's UCL claim is premised on "fraudulent" fees and charges assessed onto the loan balance as well as filing a false declaration of compliance with §2923.55, "unfair" business practices because of Defendant's "Dual Tracking" of

Plaintiff's loan modification process and "unlawful" business practices due to the violations of Civil Code §§ 2923.55 and 2923.6.

The term "fraudulent" as used in section 17200 does not refer to the common law tort of fraud but only requires a showing that members of the public are likely to be deceived. *Puentes v. Wells Fargo Home Mortg., Inc,* (2008) Cal.App.4th 638 (Quotations omitted). "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'" *Puentes,* Supra at 645. Here, Defendant's conduct not only deceives the general public but targets a vulnerable group of consumers who are at risk of losing their home. Here, Defendant claims that §2923.55 is inapplicable to this loan because the declaration of compliance claims compliance took place at least 30 day prior to the signing of the declaration, thus, the claimed compliance took place in December 2012. However, Defendant fails to explain why the declaration of compliance recorded with the NOD, specifically states that there was compliance with §2923.55.

Another contradiction arises by virtue of Defendant's admission that Wells Fargo was in fact in direct contact with Plaintiff more than thirty (30) days prior to the recordation of the NOD. However, the declaration of compliance states that Defendant was forced to pursue the due diligence avenue under the code which is only permissible when Defendant is unable to reach the borrower by telephone.

*Cal. Bus. & Prof. Code* §17200 proscribes "any unlawful, unfair or fraudulent business act of practice[.]" Any such act serves the basis for a claim of unfair competition. *Cal-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.,* (1999) 20 Cal.4th 163, 180; *In re Pomona Valley Med. Group,* (9th Cir. 2007) 476 F.3d 665, 674. Plaintiffs' UCL cause of action is premised on unfair and unlawful business practices. Virtually any law or regulation- federal or state, statutory or common law-

can serve as predicate for a section 17200 violation. The unlawful practices prohibited by the statute are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made. *Saunders v. Superior Court* (1994) 27 Cal. App. 4th 832,838-39. Defendants failure to comply with §§2923.55 and 2923.6 is unlawful.

Virtually any law of regulation – federal or state, statutory or common law – can serve as a predicate for a section 17200 violations. Business & Professions Code §17200 does not proscribe specific activities, but broadly prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Cal. Bus. & Prof. Code *§17200*. Because section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa." *Puentes v. Wells Fargo Home Mortg., Inc.*, (2008) 160 Cal. App. 4th 638, 643-644. Plaintiff has standing to assert this claim. *Saunders v. Superior Court* (1994) 27 Cal. $4^{tt}$, 832.

Thus, if a business practice violates any law it also violates section 17200 and may be redressed under that section. *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 319. Furthermore, the California Supreme Court has stated that section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200. *Farmers Insurance Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383. Under Business and Professions Code section 17200, any unlawful business act constitutes unfair competition, and a private cause of action can be based on the unlawful act even if the predicate law does not provide for a private cause of action. *Washington Mutual Bank v. Superior Court* (1999) 75 Cal. App. 4th 773.

A practice is unfair if the court determines that the impact of the practice or

act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *Podolsky v. First Healthcare Corp.*, (1996) 50 Cal. App. 4th 632, 647. Defendant accepted Plaintiff's modification application, however due to its own ineffective administration and/or intentional misconduct, Plaintiff's application was never considered and no determination was ever made as to whether a foreclosure alternative was available to Plaintiff.

1. Standing

Standing to bring a UCL claim requires "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To have standing under the UCL, a plaintiff must sufficiently allege that (1) she has lost "money or property" sufficient to constitute an "injury in fact" under Article III of the Constitution, and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Birdsong v. Apple, Inc.*, 590 F.3d 959-60 (9th Cir. 2009); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855-56 (2008). Defendants have continued to cause Plaintiff apprehension of losing her home through the threat of foreclosure. "The imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm." *Nichols v. Deutsche Bank Nat. Trust Co.*, 2007 WL 4181111, at *3 (S.D. Cal. Nov. 21, 2007) "Losing one's home through foreclosure is an irreparable injury" *See, e.g., Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036, at *1 (S.D. Cal. June 15, 2007). Furthermore, the Court in *Nichols v. Deutsche Bank Nat. Trust Co.* 2007 WL 4181111, at *3, held that **"the imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."** Similarly, in *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036, at *1, the Court found that **"losing one's home through foreclosure is an irreparable injury."**

Defendant fails to recognize the high calling of efficiently and effectively handling the borrowers' files while knowing that this is someone's family home and sanctuary. Moreover, Plaintiff has in fact and continues to suffer injury in fact and loss of money and property as a result of Defendants' violations, including but not limited to legal fees, loss of property, higher cost of credit due to the deterioration of credit scores.

Here, Defendant acted "fraudulently", "unfairly" and "unlawfully" because Wells Fargo did not halt foreclosure activity after Plaintiff submitted a complete first lien loan modification application evidencing a material change in financial circumstances.

### D. **PLAINTIFF HAS SUFFICIENTLY STATED FACTS TO STATE A CLAIM FOR NEGLIGENCE**

It cannot be argued that Defendant, Wells Fargo had no duty of care. The rule that a lender does not have a duty to a borrower is only a "general rule," and only applies to situations where a lender plays its conventional role.

Defendant owes Plaintiff a duty of care because of their unconventional relationship with Plaintiffs as well as its voluntary act of requesting a loan modification application from Plaintiffs which an example of undertaking a task it was not obligated to take to begin with. Traditionally, a lender loaned money to a borrower and serviced the loan. Here, Defendant's role is not "conventional" because Wells Fargo is not receiving the benefits of Plaintiff's Note and Mortgage. Instead, Defendant holds Plaintiff's payments for the benefit of the investor. Furthermore, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. PHH, N.A.*, 186 Cal.App. 4th 727, at 741 (2010) *citing Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998).

Additionally, "[a] lender may owe a duty of care sounding in negligence to a

Case No. 13 CV 1776

borrower when the lender's activities exceed those of a conventional lender…" *Osei v. Countrywide Home Loans*, 692 F.Supp.2d 1240, 1249 (2010). One such instance is when the lender goes, "…beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning [a] trial period plan." *Ansanelli v. JP Morgan Chase Bank*, N.A., 2011 WL 1134451, *7 (N.D. Cal. March 28, 2011).

In the instant case, Plaintiff's factual allegations demonstrate Wells Fargo Participation in Plaintiff's loan modification efforts. Accordingly, by way of this Complaint, Plaintiff has alleged that Defendant went beyond its role as a conventional, silent loan servicer. "This is precisely beyond the domain of usual money lender." See *Anaselli*, 2011 WL 1134451, *7 (internal quotations omitted).

Defendant lead Plaintiffs into thinking that they were eligible for a foreclosure alternative; however, Defendant failed to review Plaintiff's complete applications for a foreclosure alternative.

In making its analysis regarding duty, the court in Ny*mark v. Heart Federal Savings & Loan,* (1991) 231 Cal. App. 3d relied on a six-part test set forth in the California Supreme Court case *Biakanja v. Irving* (1958) 49 Cal. 2s 647, 650.

> In California, the test for determining whether a financial institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him. [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the more blame attached to the defendant's conduct and, [6] the policy of preventing future harm." Citations omitted. *Nymark* at 1098 citing to *Biakanja* at 650.

In *Nymark*, plaintiff alleged the bank negligently appraised the property and as a result, plaintiff was harmed because the appraisal did not reveal certain problems. There, the court went through the six-part test above, and determined the bank owed

no duty to plaintiff because as alleged by plaintiff, the appraisal was undertaken to protect the bank's interest in the loan transaction, not plaintiff's interest. (*Nymark*, at 1098.)

Here, Plaintiff meets the six-part test as set forth above because (1) The review process was intended to affect Plaintiffs; (2) It was foreseeable that Plaintiff would be harmed by Defendant's failure to properly review Plaintiff; (3)Plaintiff has suffered injury because the arrearages increased the longer they were in review and the subsequent foreclosure; (4) Wells Fargo told Plaintiff she was eligible for an alternative to foreclosure, thus Plaintiff continued to apply and wait, causing the arrearages to grow, while Defendants added unlawful charges to the loan balance; (5) it is morally wrong to deceive Plaintiff to think she was eligible for a foreclosure alternative, and then accept a complete loan modification application from her and never reviewing it, simply for the bank's own financial gain; (6) by virtue of the fact that the Federal Government has enacted the National Mortgage Settlement, and by the very terms set forth in the HAMP Guidelines, there is a public policy against Defendant's behavior.

Plaintiff urges this Court to employ this six-part test as set forth by the California Supreme Court and find that Defendant owed Plaintiffs a duty as set forth above.

## III.  CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss because Defendants persistently violated §§ 2923.55 AND 2923.6 from January 1, 2013 to date.  Further, not only did Wells Fargo owed Plaintiffs a general duty of care, but it breached that duty by accepting Plaintiffs' complete loan modification application and failed to make a determination of Plaintiff's eligibility. Plaintiff further submits that Wells Fargo's malfeasance arises to a *Negligence per se*

claim   To the extent that the Court is inclined to grant this motion, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend the Complaint to cure any deficiencies and add additional factual basis in support of their claims.

Respectfully Submitted.

DATED: August 26, 2013              **Law Offices of Joseph R. Manning, Jr.**

                                    By:   /S/  Joseph R. Manning
                                          JOSEPH R. MANNING JR.
                                          Attorneys for Plaintiffs

# PROOF OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the cause. My business address is 4667 MacArthur Blvd., Suite 150, Newport Beach, CA 92660.

On August 26, 2013 I served the true copies of the foregoing document described as **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the interested parties in this action, addressed as follows:

**Served Electronically via Court's CM/ECF System:**

*Attorneys for Defendant*
WELLS FARGO BANK, N.A.
David M. Newman
dnewman@afrct.com
Anglin, Flewelling, Rasmussen,
Campbell & Trytten LLP
199 S. Los Robles Ave., Ste. 600
Pasadena, California 91101-2459

*Attorneys for Defendant*
NDEX WEST, LLC
Edward A. Treder
Madeleine K. Lee
madeleiL@bdfgroup.com
20955 Pathfinder Road, Suite 300
Diamond Bar, CA 91765

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this affidavit was executed on August 26, 2013.

Tina Mehrazar

Case No. 13 CV 1776

25
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS